J. Ryan Mitchell (9362)
Christopher A. Langston (18218)
MITCHELL BARLOW & MANSFIELD, P.C.
Nine Exchange Place, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 998-8888
Email: rmitchell@mbmlawyers.com
clangston@mbmlawyers.com

*Attorneys for Plaintiff ICDH, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ICDH, LLC d/b/a INTERIOR CONCEPTS DESIGN HOUSE, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ALLISON YATES, an individual; SAWYER HEMSLEY, an individual; COWRITTEN STUDIO, LLC, a Utah limited liability company,<br><br>Defendants. | **COMPLAINT**<br><br>Case No.<br><br>Judge:<br><br>***Jury Trial Demanded*** |

Plaintiff ICDH, LLC d/b/a Interior Concepts Design House ("Plaintiff" or "ICDH"), by and through its undersigned counsel, for its complaint against Defendants Allison Yates, Sawyer Hemsley, and Cowritten Studio, LLC (collectively, "Defendants") alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff ICDH, LLC d/b/a Interior Concepts Design House is a Utah limited liability company with its principal place of business in Pleasant Grove, Utah.

2. Defendant Allison Yates ("Yates") is an individual who resides in Utah County, Utah.

3. Defendant Sawyer Hemsley ("Hemsley") is an individual who upon information and belief resides in Utah County, Utah.

4. Defendant Cowritten Studio, LLC ("CSL") is a Utah limited liability company with its principal place of business located in Salt Lake City, Utah. Upon information and belief, Yates and Hemsley are members and/or managers of CSL.

5. The Court has original subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including specifically Plaintiff's claims asserted under U.S. Copyright Act 17 U.S.C. §§ 101, et seq. and the Defend Trade Secrets Act 18 U.S.C. §§ 1831, et seq.

6. The Court has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367 because such claims are so related to the claims arising under the laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is appropriate in this forum under 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more Defendants resides in this district and a substantial part of the events giving rise to the asserted claims occurred in this district.

8. Defendants are subject to personal jurisdiction in this Court because they are domiciled in Utah, entered into contracts in Utah, engaged in unlawful conduct in Utah, and/or have sufficient minimum contacts with the forum so that subjecting them to the Court's jurisdiction in this action does not offend traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

9. ICDH is a professional interior design firm that specializes in creating unique, personalized interior designs for residential and commercial properties.

10. As part of its business, ICDH provides concept development, space planning, interior design, architectural detailing, and custom furniture design and acquisition for residential and commercial clients.

11. In the course of providing those services, ICDH creates original interior design plans, layouts, technical drawings, technical design materials, and related project documents that are fixed in tangible media such as CAD files, printed plans, and renderings.

12. ICDH hired Yates on or about April 15, 2021, as a Designer.

13. ICDH later promoted Yates to Senior Designer. In that role, Yates was entrusted with leading and managing design projects from concept through installation and with participating in internal strategic decisions relating to project strategy and company direction.

14. By virtue of her position as Senior Designer, Yates had access to substantial amounts of ICDH's confidential and trade secret information, including client identities, client preferences, pricing information, business strategies, expansion plans, vendor and supplier information and pricing terms.

15. As ICDH employee, Yates also managed and oversaw interior design work for numerous ICDH clients, including projects for Hemsley.

16. Hemsley became an ICDH client in approximately April 2022.

17. On April 7, 2022, ICDH and Hemsley entered into an Interior Design Agreement dated April 7, 2022 (the "Design Agreement"). A true and correct copy of the Design Agreement is attached hereto as Exhibit A.

18. Under the Design Agreement, ICDH agreed to provide interior design and related services to Hemsley at the hourly rates set forth in the agreement's fee schedule.

19. The Design Agreement expressly provides that ICDH's "drawings are and remain the intellectual property of the ICDH," and that "ICDH retains ownership and copyright of [its] drawings at all times."

20. The Design Agreement further provides that ICDH's "[p]roject drawings and documents cannot be used by [Hemsley] for any purpose other than completion of Project by ICDH as laid out in this agreement."

21. The Design Agreement also provides that upon termination, "[a]ll in-progress proposals and orders will be completed by ICDH and delivered to Client at hourly rate."

22. From April 2022 through May 2026, ICDH provided design services to Hemsley on multiple residential and commercial projects under the Design Agreement.

23. As of early June 2026, when Hemsley terminated ICDH, ICDH was actively providing design services on four Hemsley projects: (1) the Spears Building; (2) the Hilltop Residence; (3) Pop 'N Pins Bowling and Entertainment venue; and (4) Kings Market (collectively, the "Projects").

24. The Spears Building project ("Spears"), a compete interior redesign and furnishing of an approximately 3,000 square foot luxury apartment in New York City.

25. The Hilltop Residence project ("Hilltop"), a complete interior redesign and furnishing of a luxury residence in Beverly Hills, California.

26. The Pop 'N Pins Bowling and Entertainment venue project ("Pop 'N Pins"), a complete interior design for a boutique, hospitality-inspired bowling venue, located in Preston, Idaho.

27. The Kings Market project ("Kings Market"), a complete interior design and concept development for a boutique market and branded retail destination featuring Hemsley's proprietary brands alongside a curated selection of complementary products in an integrated specialty grocery market, food hall, coffee shop, boutique retail, office supply store, teaching kitchen, rentable event and hospitality spaces that were being blended into a cohesive guest experience that reflected Hemsley's overall brand identity.

28. As of June 2026, ICDH had performed, and was performing, substantial work on each of the Projects, including concept development, complete interior design development, space planning, specifications, renderings, and detailed CAD drawings.

29. Yates resigned from ICDH on June 1, 2026.

30. At the time of her resignation, ICDH was paying Yates more than $100,000 annually.

31. Shortly after Yates resigned from ICDH, Hemsley notified ICDH that he was terminating his relationship with ICDH.

32. Despite the express terms of the Design Agreement, Hemsley refused to allow ICDH to complete the work that was then in-progress on the Projects.

33. Upon information and belief, before Yates resigned from ICDH, Yates and Hemsley agreed to form a competing interior design firm.

34. Upon further information and belief, Yates and Hemsley further agreed that Yates would resign from ICDH, copy and take ICDH's intellectual property, including its project drawings and documents related to the Projects, form a competing design firm with Hemsley, terminate ICDH from the Projects, and then use ICDH's property, including its design drawings and materials to continue work on the Projects through their competing firm.

35. On June 3, 2026, through counsel, ICDH notified Yates that ICDH understood she was pursuing other opportunities within the interior design industry and reminded her of her obligations not to use any of ICDH's confidential information, trade secret information, or copyrighted works for her own benefit or for the benefit of any third party.

36. Yates did not comply with that demand.

37. On June 12, 2026, ICDH again wrote to Yates through counsel, reiterating ICDH's prior demands, advising that ICDH had discovered Yates was using ICDH's copyrighted work and intellectual property to work directly with Hemsley on the Projects, and demanding that she immediately cease that conduct.

38. Yates again refused to comply.

39. ICDH has discovered that, before resigning, Yates forwarded from her ICDH email account to her personal email account certain ICDH design work and project documents, including materials relating to the Prjojects.

40. ICDH has also discovered that, before resigning, Yates forwarded or took confidential and trade secret information, including customer files, ICDH's vendor pricing terms, and other confidential business information belonging to ICDH.

41. On or about June 8, 2026, Yates and Hemsley formed CSL, an interior design firm that competes directly against ICDH.

42. After ICDH's termination, Defendants have used, and upon information and belief continue to use, ICDH's project drawings, technical design materials, renderings, and other ICDH documents in continuing work on the Projects.

43. Upon information and belief, Defendants have also used, and continue to use, ICDH's confidential and trade secret information in their new business, including ICDH's vendor and supplier pricing terms.

44. Various ICDH vendors have reported to ICDH that Defendants have been using ICDH's copyrighted materials in Defendants' continued work on the Projects.

45. Vendors have also informed ICDH that Defendants have been contacting them and trying to negotiate pricing terms using the confidential pricing that ICDH had negotiated.

46. Despite multiple demands from ICDH that Defendants cease any use of ICDH's copyrighted materials and confidential and trade secret information, Defendants have refused to do so.

## FIRST CAUSE OF ACTION
## (Copyright Infringement 17 U.S.C. § 101, et seq. Against All Defendants)

47. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

48. In connection with the Projects, ICDH created original interior design plans, technical drawings, two-dimensional artwork, design drawings, and original compilations consisting of the selection, coordination, arrangement, layout, and overall presentation of the project materials (collectively, the "Copyrighted Work").

49. The Copyrighted Work are original works of authorship fixed in tangible media of expression, including CAD files, printed plans, renderings, and related materials.

50. The Copyrighted Works were independently created by ICDH or its employees, and are thus works made for hire.

51. The Copyrighted Work possess at least some minimal degree of creativity, including ICDH's creative choices concerning in the selection, arrangement, coordination, and

presentation of the specific interior design aspects identified in the design plans, technical drawings, and two-dimensional artwork.

52. ICDH is the owner of the Copyrighted Work and holds the exclusive rights protected by the Copyrighted Act.

53. ICDH has obtained certificates of registration from the United States Copyright Office for the Copyrighted Work.

54. ICDH received Registration Number VAu 1-596-611 for technical drawings, two-dimensional artwork, and compilation work on the Hilltop project on August 6, 2026.

55. ICDH received Registration Number VAu 1-596-609 for technical drawings, two-dimensional artwork, and compilation work on the Kings Market project on August 6, 2026.

56. ICDH received Registration Number VAu 1-596-708 for technical drawings, two-dimensional artwork, and compilation work on the Spears project on August 10, 2026.

57. ICDH received Registration Number VAu 1-596-709 for technical drawings, two-dimensional artwork, and compilation work on the Pops 'N Pin project on August 10, 2026.

58. Without ICDH's authorization, Defendants copied, reproduced, used, and/or distributed the Copyrighted Works.

59. Specifically, after terminating ICDH, Defendants used ICDH's technical drawings, two-dimensional artwork, compilations, and/or other protected project materials in connection with Defendants' ongoing work on the Projects.

60. As a direct and proximate result of Defendants' infringement, ICDH has suffered damage and is entitled to all remedies available under the Copyright Act, including injunctive relief, actual damages, Defendants' profits, statutory damages to the extent available, attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Trade Secret Misappropriation – Defend Trade Secrets Act 18 U.S.C. 1831, et seq. Against All Defendants)**

61. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

62. ICDH has developed, created, and maintained trade secret information that includes, but is not limited to, information regarding its clients, including client lists, pricing terms, and preferences, negotiated vendor and supplier pricing, business plans, methods, and marketing strategies.

63. As part of her employment with ICDH, Yates had access to ICDH's trade secrets, including, but not limited to, its confidential, non-public client lists, which includes client identities, contact information, and preferences, company project opportunities, company pricing information, vendor and supplier information and pricing terms, business methods, marketing strategies, and other company confidential information. ICDH's trade secrets do not include, but are separate and distinct from, its Copyrighted Work.

64. ICDH has taken reasonable measures to protect and maintain the secrecy of its trade secrets, including limiting access to only those employees with a business need for the information, and instructing employees of the need to maintain the confidentiality and secrecy of such information, and securing the employee's promise to treat such information as confidential and to use it only for legitimate business purposes of ICDH.

65. ICDH's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure of use of the information. ICDH has expended significant time and resources to develop and maintain its trade secrets.

66. Upon information and belief, Yates misappropriated ICDH's trade secrets by, among other things, downloading or otherwise taking ICDH's confidential client lists, pricing information, vendor and supplier pricing terms, business methods, and marketing strategy information when she resigned from ICDH, and using ICDH's trade secret information, along with the other Defendants, in their continued work on the Projects as well as potentially other work they are performing.

67. Hemsley and CSL misappropriated ICDH's trade secrets by, among other things, acquiring ICDH's trade secret information from Yates while knowing or having reason to know that she obtained those trade secrets through wrongful means, and by using and/or disclosing ICDH's trade secrets without ICDH's consent while, at the time of disclosure or use, knowing or having reason to know that their knowledge of ICDH's trade secrets was: (a) derived from or through Yates who had utilized improper means to acquire ICDH's trade secrets; (b) acquired under circumstances giving rise to a duty to maintain ICDH's trade secrets' confidentiality and secrecy or limit their use; and/or (c) derived from or through a person who owed a duty to ICDH to maintain the secrecy or limit the use or disclosure of ICDH's trade secrets.

68. For instance, Yates and/or the other Defendants have used the secret pricing terms that ICDH has negotiated with its vendors to try to obtain the same pricing for CSL.

69. As the direct and proximate result of Defendants' misappropriation of ICDH's trade secrets, ICDH has suffered damages in an amount to be proven at trial and is further entitled to preliminary and permanent injunctive relief.

70. Defendants' conduct and misappropriation as alleged herein was the result of willful and malicious or intentionally fraudulent conduct, or were acts and omissions that

manifest a knowing and reckless indifference toward, and disregard of, the rights of others, including ICDH, entitling ICDH to recover punitive damages against Defendants.

71. Under 18 U.S.C. § 1836(b)(3)(C), ICDH is entitled to exemplary damages for willful and malicious misappropriation of ICDH's trade secrets.

72. In accordance with 18 U.S.C. § 1836(b)(3)(D), ICDH is entitled to recovery of its attorney's fees and costs.

**THIRD CAUSE OF ACTION**
**(Misappropriation of Trade Secrets under Utah Code §§ 13-24-1, et seq.)**

73. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

74. ICDH has developed, created, and maintained trade secret information that includes, but is not limited to, information regarding its clients, including client lists, pricing terms, and preferences, negotiated vendor and supplier pricing, business plans, methods, and marketing strategies.

75. As part of her employment with ICDH, Yates had access to ICDH's trade secrets, including, but not limited to, its confidential, non-public client lists, which includes client identities, contact information, and preferences, company project opportunities, company pricing information, vendor and supplier information and pricing terms, business methods, marketing strategies, and other company confidential information. ICDH's trade secrets do not include, but are separate and distinct from, its Copyrighted Work.

76. ICDH has taken reasonable measures to protect and maintain the secrecy of its trade secrets, including limiting access to only those employees with a business need for the information, and instructing employees of the need to maintain the confidentiality and secrecy of

such information, and securing the employee's promise to treat such information as confidential and to use it only for legitimate business purposes of ICDH.

77. ICDH's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure of use of the information. ICDH has expended significant time and resources to develop and maintain its trade secrets.

78. Upon information and belief, Yates misappropriated ICDH's trade secrets by, among other things, downloading or otherwise taking ICDH's confidential client lists, pricing information, vendor and supplier pricing terms, business methods, and marketing strategy information when she resigned from ICDH, and using ICDH's trade secret information, along with the other Defendants, in their continued work on the Projects as well as potentially other work they are performing.

79. Hemsley and CSL misappropriated ICDH's trade secrets by, among other things, acquiring ICDH's trade secret information from Yates while knowing or having reason to know that she obtained those trade secrets through wrongful means, and by using and/or disclosing ICDH's trade secrets without ICDH's consent while, at the time of disclosure or use, knowing or having reason to know that their knowledge of ICDH's trade secrets was: (a) derived from or through Yates who had utilized improper means to acquire ICDH's trade secrets; (b) acquired under circumstances giving rise to a duty to maintain ICDH's trade secrets' confidentiality and secrecy or limit their use; and/or (c) derived from or through a person who owed a duty to ICDH to maintain the secrecy or limit the use or disclosure of ICDH's trade secrets.

80. For instance, Yates and/or the other Defendants have used the secret pricing terms that ICDH has negotiated with its vendors to try to obtain the same pricing for CSL.

81. As the direct and proximate result of Defendants' misappropriation of ICDH's trade secrets, ICDH has suffered damages in an amount to be proven at trial and is further entitled to preliminary and permanent injunctive relief, and other relief in accordance with Utah Code §§ 13-24-3 and 13-24-4(a).

82. Defendants' conduct and misappropriation as alleged herein was the result of willful and malicious or intentionally fraudulent conduct, or were acts and omissions that manifest a knowing and reckless indifference toward, and disregard of, the rights of others, including ICDH, entitling ICDH to recover punitive damages against Defendants.

83. Under Utah Code § 13-24-4(2), ICDH is entitled to exemplary damages for willful and malicious misappropriation of ICDH's trade secrets.

84. In accordance with Utah Code § 13-24-5, ICDH is entitled to recovery of its attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract—Against Defendant Hemsley)**

85. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

86. On April 7, 2022, ICDH and Hemsley entered into the Design Agreement, which is a valid and binding agreement.

87. ICDH performed its obligations under the Design Agreement or was otherwise excused from performance.

88. Section 7 of the Design Agreement provides that ICDH's "Project drawings and documents cannot be used by [Hemsley] for any purpose other than completion of the Project by ICDH . . . ."

89. Section 13 of the Design Agreement provides that upon termination of the Design Agreement, "[a]ll in-process proposals and orders will be completed by ICDH and delivered at Client at [ICDH's] hourly rate."

90. Hemsley breached the Design Agreement by using ICDH's project drawings and documents for a purpose other than completion of the Projects by ICDH, namely by terminating ICDH and then continuing to use its project drawings and documents for his and the other Defendants work on the Projects.

91. Hemsley further breached the Design Agreement by terminating ICDH and prohibiting it from completing the proposals, orders, and work that was then in-process on the Projects.

92. As a direct and proximate result of Hemsley's breaches of the Design Agreement, ICDH has been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Hemsley)**

93. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

94. As a matter of law, the Design Agreement contains an implied covenant of good faith and fair dealing requiring Hemsley to not act in a way that injures or destroys ICDH's right to receive the benefits of its bargains under the Design Agreement but to act in a manner consistent with the law and with ICDH's justified expectations.

95. ICDH entered into the Design Agreement with the reasonable and justified expectation that it would receive, among other things, Hemsley's compliance with the terms of the Design Agreement, including that he would not use ICDH's project drawings and documents on the Projects without ICDH's involvement, and that upon termination of the Design

Agreement, ICDH would be permitted to complete all in-progress work on the Projects at its hourly rate.

96. Hemsley has breached the covenant of good faith and fair dealing inherent in the Design Agreement by, among other things, using ICDH's project drawings and documents without ICDH's continued involvement and by refusing to permit ICDH to complete the in-process work on the Projects.

97. As a direct and proximate result of Hemsley's breaches of the covenant of good faith and fair dealing in the Design Agreement, ICDH has been damaged in amounts to be proven at trial.

**SIXTH CAUSE OF ACTION**
**(Intentional Interference with Contractual and Prospective Economic Relations—Yates and CSL)**

98. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

99. ICDH has, and/or had, existing contractual and/or prospective economic relationships with its clients, including Hemsley.

100. Yates and CSL knew of the existence of ICDH's contractual and economic relationship with Hemsley, and knew of the restriction preventing him from using ICDH's project drawings and documents for the Projects without ICDH's continued involvement in the Projects.

101. Despite such knowledge, Yates and CSL have intentionally interfered with ICDH's contractual and economic relations by, among other things, knowingly, willfully, and/or maliciously causing, encouraging, and/or inducing Hemsley to terminate the Design Contract

with ICDH and to continue using ICDH's project drawing and documents, which are protected by copyright, without ICDH's continued involvement in the Projects.

102. Yates and CSL have intentionally interfered with ICDH's contractual and economic relations using improper means, including without limitation, conspiring with Hemsley to terminate the Design Agreement, forming their own competing interior design firm, and continuing to use ICDH's copyrighted project drawings and other documents on the Projects without ICDH's continued involvement and in violation of ICDH's exclusive rights to its Copyrighted Work.

103. There was no privilege or justification for Defendants' conduct.

104. As the direct and proximate result of Defendants' intentional interference with ICDH's contractual and prospective economic relationships through improper means, ICDH has suffered damages in an amount to be proven at trial.

105. Defendants intentional interference as alleged herein was the result of willful and malicious or intentionally fraudulent conduct, or were acts and omissions that manifested a knowing and reckless indifference toward, and disregard of, the rights of ICDH, entitling ICDH to recover punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Intentional Interference with Contractual and/or Prospective Economic Relations—Hemsley and CSL)**

106. ICDH realleges and incorporates by reference all the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

107. ICDH has, and/or had, existing contractual and/or prospective economic relationships with its employees, including Yates.

108. Hemsley and CSL knew of the existence of ICDH's contractual and economic relationship with Yates.

109. Despite such knowledge, Hemsley and CSL have intentionally interfered with ICDH's contractual and economic relations by, among other things, knowingly, willfully, and/or maliciously causing, encouraging, and/or inducing Yates to terminate her employment with ICDH and to form CSL to compete against ICDH, and to continue using ICDH's project drawing and documents, which are protected by copyright, without ICDH's continued involvement in the Projects.

110. Hemsley and CSL have intentionally interfered with ICDH's contractual and economic relations using improper means, including without limitation, conspiring with Yates to terminate her employment with ICDH, forming their own competing interior design firm, and continuing to use ICDH's copyrighted project drawings and other documents on the Projects without ICDH's continued involvement and in violation of ICDH's exclusive rights to its Copyrighted Work.

111. There was no privilege or justification for Defendants' conduct.

112. As the direct and proximate result of Defendants' intentional interference with ICDH's contractual and prospective economic relationships through improper means, ICDH has suffered damages in an amount to be proven at trial.

113. Defendants intentional interference as alleged herein was the result of willful and malicious or intentionally fraudulent conduct, or were acts and omissions that manifested a knowing and reckless indifference toward, and disregard of, the rights of ICDH, entitling ICDH to recover punitive damages.

**EIGHTH CAUSE OF ACTION**
**(Civil Conspiracy—All Defendants)**

114. ICDH realleges and incorporates by reference the preceding paragraphs and allegations of this Complaint as though fully set forth herein.

115. Defendants Yates, Hemsley, and CSL constitute two or more legal persons.

116. Defendants intended to accomplish an unlawful object or course of action, including without limitation, the violation of ICDH's Copyrighted Work and the misappropriation of ICDH's trade secrets.

117. As alleged herein, Defendants had a meeting of the minds regarding the unlawful object or course of action to be accomplished.

118. As alleged herein, Defendants engaged in one or more unlawful, overt acts in furtherance of their unlawful object or course of action to be accomplished, including the violations of ICDH's rights in its Copyrighted Work and the misappropriation of ICDH's trade secrets.

119. Defendants entered into a conspiracy and combination to undertake, accomplish, and perform the unlawful object and/or course of action described above to enrich themselves at ICDH's expense and/or to harm ICDH. In furtherance of their agreed-upon unlawful object and/or course of action, Defendants undertook the unlawful actions described in this Complaint.

120. Such actions are unlawful, overt acts in furtherance of the conspiracy and combination undertaken by Defendants, or two or more of them.

121. As a direct and proximate result of the Defendants' conspiracy, ICDH has been damaged in an amount to be proven at the trial of this matter, plus costs, attorney fees, and pre- and post-judgment interest.

122. Defendants' acts as alleged herein were the result of willful, knowing, and actually malicious conduct, or were acts and omissions that manifest a knowing and reckless indifference toward, and disregard of, the rights of ICDH, entitling ICDH to recover punitive and/or exemplary damages against Defendants, in an amount to be determined at trial.

123. ICDH is therefore entitled to relief as set forth below in the Prayer for Relief, including an order and judgment that all Defendants are jointly and severally liable to ICDH for the damages caused by any of the other Defendants' unlawful and/or improper conducted in connection with their conspiracy.

**PRAYER FOR RELIEF**

WHEREFORE, ICDH prays for relief against Defendants as follows:

A. On ICDH's First Cause of Action for copyright infringement, ICDH is entitled to the remedies available under the Copyright Act, 17 U.S.C. §§ 502, 503, 504, and 505, including injunctive relief, actual damages, Defendants' profits, and/or statutory damages, pre- and post-judgment interest, as well as ICDH's attorneys' fees and costs.

B. On ICDH's Second Cause of Action for violations of the Federal Defend Trade Secrets Act, for (i) judgment against Defendants for damages caused by their misappropriation of ICDH's trade secrets in an amount to be proven at trial, plus statutory, exemplary, and/or punitive damages, and attorney fees and costs; and (ii) injunctive relief, including a temporary restraining order, preliminary injunction, and permanent injunction that restrains Defendants from further misappropriation, use, or disclosure of ICDH's trade secrets.

C. On ICDH's Third Cause of Action for violations of Utah's Trade Secrets Act, (i) judgment against Defendants for damages caused by their misappropriation of ICDH's trade secrets in an amount to be proven at trial, plus statutory, exemplary, and/or punitive damages, and attorney fees and costs; and (ii) injunctive relief, including a temporary restraining order, preliminary injunction, and permanent injunction that restrains Defendants from further misappropriation, use, or disclosure of ICDH's trade secrets.

D. On ICDH's Fourth Cause of Action for breach of contract, for judgment against Defendant Hemsley for breaching the applicable Agreement in an amount to be proven at trial but no less than $300,000, plus attorney fees, costs, and pre- and post-judgment interest.

E. On ICDH's Fifth Cause of Action for breach for breach of the covenant of good faith and fair dealing, for judgment against Defendant Hemsley for breaching the covenant of good faith and fair dealing inhering in the Design Agreement in an amount to be proven at trial but no less than $300,000, plus attorney fees, costs, and pre- and post-judgment interest.

F. On ICDH's Sixth Cause of Action for Intentional Interference with Contractual and Economic Relations, for judgment against Defendants Yates and CSL for damages caused by their intentional interference with ICDH's contractual relationships and prospective economic relations with Hemsley in an amount to be proven at trial, plus punitive and/or exemplary damages, costs, and pre- and post-judgment interest.

G. On ICDH's Seventh Cause of Action for Intentional Interference with Contractual and Economic Relations, for judgment against Defendants Hemsley and CSL for damages caused by their intentional interference with ICDH's contractual relationships and prospective economic relations with Yates in an amount to be proven at trial, plus punitive and/or exemplary damages, costs, and pre- and post-judgment interest.

H. On ICDH's Eighth Cause of Action for civil conspiracy, for (i) judgment against Defendants for their actions and conduct in furtherance of their conspiracy against ICDH in an amount to be proven at trial, plus attorney fees, costs, and pre- and post-judgment interest, and (ii) an order of the Court declaring that each Defendant is a co-conspirator of the other Defendants and that each Defendant is jointly and severally liable to ICDH for the damages

caused by any of the other Defendants' unlawful and/or improper conducted in connection with their conspiracy.

I. For punitive, exemplary, and/or statutory damages as provided by law.

J. For ICDH's attorney's fees and costs incurred in this action to the extent provided by contract or law.

K. For such other and further relief as the Court deems necessary, just, and proper under the circumstances of this case.

**DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38, ICDH hereby demands a trial by jury on all issues so triable in this case.

DATED: August 25, 2026.

MITCHELL BARLOW & MANSFIELD, P.C.

_/s/ *J. Ryan Mitchell*__
J. Ryan Mitchell
*Attorneys for Plaintiff, ICDH, LLC*